## 30444. GRAHAM v. THE STATE.

INGRAM, Justice.

Appellant Ernest Graham was tried before a jury in January, 1975, on an indictment in Crawford Superior Court charging him with the murder of his wife. He was found guilty and sentenced to life imprisonment. His motion for new trial was overruled in July, 1975, and he has appealed to this court from his judgment of conviction, sentence and denial of a new trial.

Appellant and his wife owned and operated an establishment known as "Ernie's Truck Stop." They also resided at that location. On the evening of March 3, 1974, about 9 p.m., several men gathered at the truck stop to play poker in one of the back rooms. Appellant, however, remained in the kitchen most of the evening and entered the adjoining room, where the men were playing cards, only occasionally in order to serve drinks or food. Mrs. Graham also did not participate in the poker game, but she stayed in the playing room throughout the night in order to receive a "cut of the pot" from time to time as compensation for the use of the premises.

Shortly after midnight the poker game was interrupted by the sound of a pistol being fired in the kitchen. The bullet passed through the kitchen door into

the room of card players and wounded one of the men who was sitting at the card table. Mrs. Graham, who also had been sitting at the table, immediately rushed toward the door which at that time was rattling as though someone were trying to open it. When she reached the door, it opened and she yelled, "Ernie." Appellant, who was standing in the doorway, shouted, "I warned you goddamit, I warned you goddamit," while he repeatedly fired at her with a pistol.

As Mrs. Graham fell to the floor mortally wounded, appellant put the gun in his pocket and walked back into the kitchen. He soon returned without the gun and told two of the men to put Mrs. Graham on a small bed located in a corner of the room. When they placed her on the bed, appellant hugged her and said, "Ruby, I'm sorry." Thereafter, however, appellant seemed to become confused and distraught, crying and asking people, "what's the matter with Ruby," and then, "who killed Ruby?" The men who were present at the truck stop testified that relations between appellant and his wife appeared to be normal that night; they did not witness any argument nor did they detect any underlying tension between them. Soon after he began investigating the scene, the deputy sheriff found a pistol lying in a corner of the kitchen under a pile of paper bags. The State Crime Laboratory determined that the pistol was the one used to kill Mrs. Graham but the laboratory was unable to recover any legible fingerprints from the weapon.

### I. Insanity

At trial the appellant based his defense on the contention that he was insane at the time of the homicide. The trial court charged the jury on the defense of insanity as provided by Code Ann. § 26-702, and also charged that "the act itself may be so utterly senseless and abnormal as to furnish satisfactory proof of the diseased mind." Appellant, however, argues that the trial court erred by refusing to give his request to charge on delusional compulsion (Code Ann. § 26-703).

In order for the defense of delusional compulsion to be available in a trial for murder there must be evidence that the defendant was laboring under a delusion, that the act itself was connected with the delusion and furthermore

that the delusion would, if true, justify the act. *Brown v. State,* 228 Ga. 215, 217 (2) (184 SE2d 655) (1971); see also, *Brannen v. State,* 235 Ga. 505, 506 (2) (220 SE2d 264) (1975). The evidence relating to appellant's sanity must, therefore, be reviewed in order to determine if the requested charge on delusional compulsion should have been given by the trial court.

Appellant was committed to Central State Hospital in 1968 as a "mentally ill person." He was subsequently released, but returned to Central State about nine or ten times thereafter. His last stay in Central State Hospital occurred in 1970. Dr. Lundell, who was on the board which committed appellant in 1968, testified that appellant was diagnosed at that time as "suffering from chronic alcoholism and that he needed to be hospitalized to make a final diagnosis if there was anything else wrong with him." Appellant, himself, admitted in his testimony at this trial that his initial admission to Central State Hospital and all of his later admissions were due to his alcoholism.

Dr. Bullock, a psychiatrist, was appellant's principal witness in support of his insanity defense. Dr. Bullock testified that in addition to his alcoholism appellant "has been delusional and perhaps suicidal and could be described as psychotically depressed for periods of time during the last several years." In the opinion of the psychiatrist the shooting was attributable to a re-occurrence of a delusion appellant had suffered while he was at Central State Hospital in 1968. The delusion had taken the form of a belief that his wife was in a closet at the hospital smothering to death.

Dr. Bullock testified that on the night of the shooting, "He may have had a dream or he may have had a repetition of auditory hallucinations, hearing his wife say to come get her out of this closet or this room because she was smothering to death. I believe that he was either hallucinating or had a very vivid dream and had a delusional idea that his wife was in desperate danger." Also, the fact that he said, "Ruby, I warned you goddamit," could be interpreted as a reprimand for getting herself in that predicament and being endangered.

In explaining the basis for his opinion of appellant's mental state at the time of the homicide, the psychiatrist considered it significant that the appellant was especially concerned about his wife's health on the day of the shooting. Mrs. Graham had been in poor health for a number of years prior to her death, but on the day of the shooting her condition appeared to appellant to be worse than usual.

There was also evidence that appellant consumed some beer and whiskey in the late afternoon or early evening before the poker game. However, everyone who observed him later that evening testified that he did not appear to be intoxicated. In addition, Dr. Bullock commented on appellant's inability to remember the events of the evening. He testified that, "It would have been impossible or extremely difficult for [appellant] to recall what occurred when he was in this irrational state of mind."

Appellant, who appeared as a witness in his own behalf, testified that he was sitting at the kitchen table, asleep with his head on his arms when he heard a loud noise. He jumped up and ran to the card room door where he saw his wife standing in the doorway. She called to him, "Help me, Ernie," and he put his arms around her as she fell to the floor. He then asked several others in the room to help him place her on the bed. Appellant testified that he did not see a gun that night and denied owning a pistol.

From this review of the testimony adduced at the trial, it clearly appears that there was evidence of the first two elements of the defense of delusional compulsion, i.e., that appellant was laboring under a delusion at the time of the shooting and his act was connected with, and in response to, the delusion. However, the fact that the exact nature of the delusion is not known renders more difficult the determination whether there was evidence of justification, the third element of the defense.

The salient feature of the delusion described by the psychiatrist was appellant's perception of his wife as being in "desperate danger" of losing her life. Furthermore, the psychiatrist interpreted the appellant's actions as an attempt to extricate his wife from mortal

danger. If these circumstances had actually occurred appellant may have been justified in using deadly force to *prevent* his wife's death (see Code Ann. § 26-902 (a)), but the situation is complicated by the fact that appellant fired a shot through a closed door and then reprimanded and shot his wife several times after she became clearly visible through the open doorway. There is no evidence in the record that appellant's delusion prevented him from realizing that he was shooting through a closed door or that he was shooting at his wife. Under the evidence in this case, the jury would not have been authorized to find that appellant's delusion justified his act of shooting his wife. See *Mars v. State,* 163 Ga. 43, 51 (4) (135 SE 410) (1926); *McKinnon v. State,* 51 Ga. App. 549, 556 (181 SE 91) (1935). In our opinion, the trial court did not err in refusing to charge on the defense of delusional compulsion.

II. Documentary Evidence

Appellant contends that the trial court erred by refusing to admit into evidence his Exhibits D-2 through D-11 which were documents on file in the records of the Court of Ordinary of Crawford County (now known as Probate Court). Each document is a notice sent by the Superintendent of Central State Hospital informing the court that appellant was placed on "convalescent status" and released from the hospital on a specified date. Each notice recites that appellant's condition upon release was "improved." These notices were, apparently, sent to the court by the superintendent in accordance with Code Ann. § 88-506.7.

Appellant's only claim of harm from the exclusion of these documents is that the jury was prevented from considering records showing his additional admissions to Central State Hospital and showing his condition upon final discharge as being improved and not restored.

If any error was committed in refusing to admit these documents, it was harmless. Considerable evidence was elicited from several witnesses including appellant concerning his various admissions to Central State Hospital, the reasons for those admissions and the state of his mental health since his last discharge from the hospital. Thus, the documents, if admitted, would have been only cumulative and repetitive of other evidence

already before the jury. See *Coker v. State,* 234 Ga. 555, 559 (3) (216 SE2d 782) (1975).

Moreover, it appears that the exhibits were properly excluded. The documents were not medical records within the purview of Code Ann. §§ 38-712, 38-713, but rather were notices sent to the ordinary in accordance with Code Ann. § 88-506.7 informing the court of appellant's release from the hospital.

Insofar as the notices may be considered records kept in the regular course of business, the district attorney's stipulation that they were received by the ordinary through the mail from the hospital and were kept in the files in the ordinary's office, was not a sufficient basis for admission of the documents over objection and did not relieve the appellant of the requirement of proper preliminary proof. See *Taylor v. State,* 229 Ga. 536, 539 (2) (192 SE2d 249); *Cassano v. Pilgreen's, Inc.,* 117 Ga. App. 260, 261 (2) (160 SE2d 439) (1968). This enumeration of error is, therefore, without merit.

### III. Opinion Testimony

Appellant contends that the trial court erred by admitting, over objection, the testimony of Deputy Sheriff O'Neal that appellant was sane on the night of the homicide and had sufficient reason to distinguish between right and wrong in relation to his act. Appellant argues that the deputy was not qualified as an expert and did not testify to sufficient facts upon which to base his opinion.

The deputy sheriff testified that he had known appellant for 10 to 12 years and that his opinion of appellant's mental condition was based on his observation of appellant during that period of time and on the night of the shooting. This statement by the deputy sheriff of the facts or reasons that formed the basis for his opinion as a non-expert witness was sufficient to authorize the admission of his opinion testimony concerning appellant's sanity. Code Ann. § 38-1708; *Lingo v. State,* 224 Ga. 333, 342 (4, c) (162 SE2d 1) (1968); *Brock v. State,* 206 Ga. 397, 399 (1) (57 SE2d 279) (1950); *Jarrard v. State,* 206 Ga. 112 (3) (55 SE2d 706) (1949).

### IV. Jury Instruction on Insanity Acquittal

Appellant contends that the trial court erred by

charging the jury in the language of Code Ann. § 27-1503 on the effect of a verdict of acquittal by reason of insanity. He argues that the charge was highly prejudicial to his case. This issue has been decided adversely to appellant in *Hulsey v. State,* 233 Ga. 261, 262 (210 SE2d 797) (1974), which held that to charge the latter part of Code Ann. § 27-1503 "though inappropriate, does not amount to harmful error requiring a reversal of the judgment."

### V. Failure to Charge on Manslaughter

Appellant argues that the trial court erred in failing to charge, in the absence of request, on voluntary and involuntary manslaughter. These two enumerations of error are without merit for the reason that there is no evidence which would authorize instructions on those two offenses. See *Sims v. State,* 234 Ga. 177, 179 (3) (214 SE2d 902) (1975); and, *Watson v. State,* 235 Ga. 461, 466 (219 SE2d 763) (1975).

Appellant's contentions would, likewise, be without merit under the recent decision of *State v. Stonaker,* 236 Ga. 1 (1976), which held that in the absence of a written request by the state or the accused, the failure of the trial court to charge on a lesser crime of that included in the indictment is not error. However, the four rules, which relate to charges in the area of lesser included crimes, established in that case will be applied only to cases tried after the date of the *Stonaker* decision.

### VI. Sufficiency of the Evidence

Appellant argues that the evidence was not sufficient to support the verdict. This enumeration of error is also without merit. Several witnesses, who observed appellant shoot his wife, testified at the trial. There was also evidence that appellant and his wife often argued about his drinking and that on one occasion, three or four years prior to the homicide, appellant attacked his wife with a butcher knife. Although the evidence regarding appellant's sanity was conflicting, there was sufficient evidence to authorize the verdict of the jury. See *Powell v. State,* 235 Ga. 208, 210 (1) (219 SE2d 109) (1975).

*Judgment affirmed. All the Justices concur.*

ARGUED NOVEMBER 10, 1975 — DECIDED FEBRUARY 12, 1976 —

*Smith & Harrington, Wilton D. Harrington,* for appellant.

*Fred M. Hasty, District Attorney, Arthur K. Bolton, Attorney General, Julius C. Daugherty, Jr., Staff Assistant Attorney General,* for appellee.