### 31360. DIX v. THE STATE.

HILL, Justice.

This is a death case. Defendant Horace William Dix was indicted by the Clayton County grand jury for the offense of murder and three counts of kidnapping occurring on September 8, 1974. Following his plea of not guilty, he was tried by jury, found guilty on all four counts and sentenced to death for murder and five years on each count of kidnapping to be served consecutively. The jury found as aggravating circumstances warranting the imposition of the death penalty that the offense of murder was outrageously and wantonly vile in that it involved torture to the victim. The case is here for review of enumerated errors and the sentence of death.

The state presented evidence from which the jury was authorized to find the following facts: At approximately 11:00 a.m., on the morning of September 8, 1974, Dixie Jordan, the murder victim, and her mother, Mrs. Alpha McPherson, arrived at Dixie's apartment. The defendant, Horace Dix, former husband of Dixie Jordan, wearing a blue work shirt and pants, was waiting in the driveway. Dixie said that it would be better if she spoke with the defendant alone, so Mrs. McPherson left them at Dixie's apartment and went to visit another daughter, Barbara. Shortly thereafter, Dixie called her mother and asked her to return to Dixie's apartment for dinner about 4:00 p.m. because the defendant wanted to talk to her.

At approximately 3:00 p.m. Barbara called Dixie's apartment. The defendant answered and stated that Dixie had stepped out to visit a neighbor. Barbara asked for Dixie to return the call. Receiving no call, Barbara called Dixie's apartment again. The defendant did not

answer her inquiry as to Dixie's whereabouts but instead requested that Dixie's mother come over to the apartment. Mrs. McPherson, Barbara, and Barbara's fourteen-year-old daughter, Rita, drove over to Dixie's apartment.

When they arrived, the defendant, then wearing a brown shirt and brown striped trousers, opened the door. He stated that Dixie was in the bedroom resting. Mrs. McPherson tried to enter the bedroom but the door was locked. She called for her daughter but there was no response. At this time, the defendant stated: "Don't open that door. . . You are not messing my plans up." He had a gun drawn and was holding young Rita in front of him. When Mrs. McPherson asked the defendant why he was holding them at gunpoint, the defendant replied that they were all going to Carrollton, Georgia. When asked if Barbara and Rita could stay in the apartment, he replied that they could not because if they did they would call the police. The defendant concealed his revolver and escorted the three women to Dixie's car.

While driving, the defendant stated that Dixie would never be mistreated anymore by anyone. He spoke of his own mother and aunt and uncle and stated he was "going to take care of them." At a traffic light during the drive, the defendant told his hostages that there was a policeman nearby and not to try anything. Later, when they stopped at a gas station he again told the group not to try anything and not to try to get any police.

The defendant was eventually persuaded to let Rita have something to drink. He stopped at a store and told Mrs. McPherson to get out of the car to buy drinks and cigarettes. Mrs. McPherson got out and then refused to get back into the car even though the defendant commanded her to do so at gunpoint. Mrs. McPherson told Barbara and Rita to get out of the car. The defendant sought to block their exit. Mrs. McPherson said to him: "Horace, just don't start no stuff here." At this point she noticed that his face was scratched. When another car pulled into the store, Barbara and Rita got out of the car the defendant was driving. Although he told Mrs. McPherson to get back into the car, she refused and went inside the store to use the telephone. While Mrs. McPherson was in the store,

Barbara asked the defendant if there was anything wrong with Dixie. He replied: "Yes, I hurt her." He then stated: "If this gets out, I'll kill you, Alpha and Rita." The defendant then drove off. Mrs. McPherson called another daughter, Charlotte, and told her to go to Dixie's apartment and check the bedroom.

When Dixie Jordan's room was entered her body was found on the bed wrapped in a bed sheet. Dr. Joseph Burton, forensic pathologist and medical examiner, testified as follows: Mrs. Jordan had been struck in the area of her jaw with a blunt object. Lines of dried blood on her face were consistent with the premise that two strips of adhesive tape had been placed over Mrs. Jordan's mouth prior to the presence of the blood on her face. Mrs. Jordan had been strangled by an object placed horizontally around her neck, possibly the towel found beside her body. The strangulation was so severe that the pressure of the blood in the head rose to the point that it hemorrhaged through the pores of the skin, the whites of the eyes, and the eyelids. Three cuts, approximately three to four inches in length, had been made upon the victim's throat. These cuts were made in such a way that they should not have been fatal, but did sever the large throat muscles and cause severe bleeding. Seven superficial stab marks were inflicted into her chest and abdomen by a sharp instrument being forced through the layers of the skin and then pulled out in a slicing motion. An "S" shape, approximately six inches in length, was carved into her abdomen. All of these blows, cuts and wounds, including the strangulation, were inflicted while Mrs. Jordan was still alive. The cause of death was three stab wounds to the heart.

Two butcher knives were found in the kitchen sink. Dried blood was found on the blade of one of the knives. No fingerprints were found on the knives. Pieces of a broken ashtray were found in a garbage sack in the laundry room. There was an indication of blood on one of the pieces of the ashtray. The defendant's fingerprints were found on the ashtray. The bloodstained work shirt and pants worn by the defendant earlier that morning were found under a towel behind the clothes hamper. The blood was the same type as the victim's.

For about two weeks prior to his surrender at the sheriff's office in Carroll County, the defendant had evaded efforts by law enforcement officers to apprehend him.

Evidence offered by the defendant was intended to support his contention that he was not mentally responsible at the time of the offense because of residual damage from earlier head injuries and prior mental and emotional problems. The jury decided against the defendant and the evidence authorized the verdicts of guilty.

1. The defendant urges that the trial court erred in overruling his objections to the state's hypothetical questions directed to its expert witness, a psychiatrist. The basis of the objections was that the questions posed by the state were too narrow in that not all of the facts were set forth.

This court faced the same issue in *Davis v. State,* 153 Ga. 669, 675 (113 SE 11) (1922), where the court stated: "The criticism is that . . . the facts upon which the hypothetical question was based were not full and complete. In propounding a hypothetical question . . . all of the facts may be grouped together; but it is not essential to the admissibility of evidence that there should be a complete resume of every fact entering into and involved with the case. The omission to state any necessary fact may be shown on cross examination as a reason for discrediting the answer or affecting its probative value, and a more complete grouping of the facts involved might have been framed in propounding another hypothetical question embracing such additional facts."

Treatise writers recognize this as the prevailing rule today. See, for example, McCormick on Evidence, pp. 33, 34 (1972), where the author states: "Some courts have required that all facts material to the question should be embraced in the hypothesis, but this viewpoint seems undesirable because it is likely to multiply disputes as to the sufficiency of the hypothesis. . . The more expedient and more widely prevailing view is that there is no rule requiring that all material facts be included. The safeguards are that the adversary may on cross examination supply omitted facts and ask the expert if his

opinion would be modified by them, and further that the trial judge if he deems the original question unfair may in his discretion require that the hypothesis be reframed to supply an adequate basis for a helpful answer." See also 2 Wigmore, Evidence, § 682 (1940).

The trial court did not err in overruling the objections to the hypothetical questions.

2. The defendant urges that the trial court erred in admitting opinion testimony of a deputy sheriff that the defendant was acting (i.e., was not sincerely remorseful) at the time of his surrender.

The state called a cousin of the defendant to describe the defendant's surrender to authorities. On cross examination by defendant's counsel the cousin testified that the defendant was sobbing and "all to pieces." The state's next witness was the deputy.

The defendant objected to a statement by the deputy that the defendant was "putting on an act" by feigning grief. The trial court initially sustained the objection and required the state to elicit the facts upon which the opinion was based. The deputy testified that he personally observed the defendant for quite a while. He testified as to the defendant's erratic conduct during this period. He testified that he never saw any tears. He was then permitted to testify over renewed objection that in his opinion the defendant was putting on an act.

The testimony was admissible under Code Ann. § 38-1708. This court has repeatedly held that a person's state of mind or mental condition is properly the subject of opinion testimony and that after narrating the facts and circumstances upon which his conclusion is based, a nonexpert witness may express his opinion as to the state of mind or mental condition of another. *Spencer v. State,* 236 Ga. 697, 699 (224 SE2d 910) (1976); *Graham v. State,* 236 Ga. 378, 383 (223 SE2d 803) (1976); *Lingo v. State,* 224 Ga. 333, 342 (162 SE2d 1) (1967); *Robinson v. Murray,* 198 Ga. 690 (3) (32 SE2d 496) (1944); *Morgan v. Bell,* 189 Ga. 432, 436, 437 (5 SE2d 897) (1939).

The trial court did not err in overruling the objection.

3. The defendant urges that the trial court erred in admitting Exhibit 27, a 12-inch wooden handle butcher knife, into evidence.

A photograph of the kitchen sink in the victim's apartment showed two butcher knives of similar size, except that the blade on one knife was wider than that on the other. This photograph was admitted into evidence. The two knives were also admitted as evidence as state's Exhibits 27 and 28. There was testimony that blood of the same type as the victim's was found on Exhibit 28 and that no blood was found on Exhibit 27.

The forensic pathologist testified that the victim's wounds were made with a single edge knife with a blade approximately one inch in width and greater than four inches in length. Either Exhibit 27 or 28 would fit the pathologist's description of the weapon used.

The court did not err in admitting the knives into evidence. See *Lively v. State,* 178 Ga. 693, 695 (173 SE 836) (1934), involving the admissibility of a razor; *Katzensky v. State,* 228 Ga. 6 (3) (183 SE2d 749) (1971), involving knives; and the recent case of *Jung v. State,* 237 Ga. 73, 74 (226 SE2d 599) (1976), involving a pistol. See also Moore v. Illinois, 408 U. S. 786, 800 (92 SC 2562, 33 LE2d 706) (1972).

4. The defendant urges that the court erred in admitting the testimony of Elizabeth Wiggins, defendant's former wife, a state's witness who testified in rebuttal as to incidents which occurred during her married life with the defendant.

The defendant had called his mother, Mrs. Fannie May Dix, who testified on direct examination as to the defendant's birth, his education, his head injury while in the Navy, changes in his attitude after his return from the Navy, and his first marriage to Elizabeth Wiggins. Mrs. Dix then testified that following the defendant's divorce from Elizabeth Wiggins, custody of the child of that marriage was awarded to Mrs. Dix and the defendant. On cross examination, the witness testified that the cause of that divorce was the conduct of Elizabeth Wiggins.

In rebuttal the state called Elizabeth Wiggins who testified as to the defendant's mental state during their marriage and testified that the cause of their divorce was the defendant's cruelty, including throwing her through a window, hitting her in the head with a cup, hitting her with a hatchet, etc. Under the circumstances of this case

we do not find the admission of the testimony of Elizabeth Wiggins to be reversible error.

5. Defendant's final enumeration of error is that the trial court erred in charging the jury: "Gentlemen, you may consider flight if you find such in this case, and similar acts, if proven, from which an inference of guilt may be considered by the jury." Defendant urges that the inclusion of the words "and similar acts" constituted error for the reason that this phrase was not defined for the jury in the charge.

The charge was authorized by the evidence. During the time the defendant held his kidnap victims hostage he referred at least three times to avoiding contact with the police. Also, the act of kidnapping the three women and taking them to Carroll County was itself a form of flight or an act similar to flight under the facts of this case.

The phrase "similar acts" appears in the pattern criminal jury instruction on flight. Its use was approved in Lester v. State, 155 Ga. 882, 885 (118 SE 674) (1923). See also Hill v. State, 237 Ga. 610 (229 SE2d 419) (1976) and cits. In the absence of request, the court's failure to define the meaning of terms used in the charge is not ordinarily ground for reversal. See Fountain v. State, 207 Ga. 144 (2) (60 SE2d 433) (1950); Pound v. State, 180 Ga. 83 (4) (178 SE 291) (1934); Marshman v. State, 88 Ga. App. 250 (d) (76 SE2d 443) (1953); Farr v. State, 83 Ga. App. 855 (5) (65 SE2d 270) (1951); Gaither v. State, 63 Ga. App. 414, 416 (11 SE2d 254) (1940).

The meaning of the phrase "similar acts," although necessarily somewhat inexact, is not so obscure as to require definition absent a request, and the trial court did not err in failing to define that phrase.

6. Sentence review: In our sentence review we have considered the aggravating circumstance found by the jury and the evidence concerning the crime introduced in court. We have reviewed the sentence as required by Ga. L. 1973, p. 159 et seq. (Code Ann. § 27-2537 (c) (1-3)), as we have in each case involving a death penalty under this statute. We conclude that the sentence of death imposed on Horace William Dix was not imposed under the influence of passion, prejudice or any other arbitrary

factor.

The jury found as a statutory aggravating circumstance that the offense of murder was outrageously and wantonly vile in that it involved torture to the victim (Code Ann. § 27-2534.1 (b) (7)), and the evidence supports the jury's finding. See *Harris v. State,* 237 Ga. 718 (1976), for a discussion of the constitutionality of this statutory aggravating circumstance.

Although lesser sentences than death are frequently imposed in domestic murder cases, it does not follow that the death penalty would not be authorized for murder of one spouse by another under any circumstances. The statute does not forbid imposition of the death penalty upon marital murderers; it merely requires that statutory aggravating circumstances exist. They exist here. The evidence showed that the victim was deliberately and methodically tortured by being cut and carved as well as strangled before being put to death. The fact that this couple had been married does not prevent imposition of the death penalty. See *Smith v. State,* 236 Ga. 12 (222 SE2d 308) (1976).

We have compared the evidence and sentence in this case with similar cases contained in the appendix attached to this opinion. See particularly *House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *McCorquodale v. State,* 233 Ga. 369 (211 SE2d 577) (1974); *Harris v. State,* 237 Ga. 718, supra, and *Hill v. State,* 237 Ga. 610, supra. Horace William Dix' sentence to death for murder is not excessive or disproportionate to the penalty imposed in similar cases considering both the crime and the defendant.

*Judgment affirmed. All the Justices concur, except Ingram, J., who concurs in the judgment only, and Gunter, J., who dissents.*

ARGUED SEPTEMBER 20, 1976 — DECIDED JANUARY 4, 1977 — REHEARING DENIED JANUARY 27, 1977.

*Albert B. Wallace,* for appellant.
*William H. Ison, District Attorney, Douglas N.*

*Peters, Assistant District Attorney, Arthur K. Bolton, Attorney General, James L. Mackay, Staff Assistant Attorney General,* for appellee.

APPENDIX.

Similar cases considered by the court: *House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974); *McCorquodale v. State,* 233 Ga. 369 (211 SE2d 577) (1974); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1974); *Stack v. State,* 234 Ga. 19 (214 SE2d 514) (1975); *Owens v. State,* 233 Ga. 869 (214 SE2d 173) (1975); *Prevatte v. State,* 233 Ga. 929 (214 SE2d 365) (1975); *Jordan v. State,* 233 Ga. 929 (214 SE2d 365) (1975); *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975); *Tamplin v. State,* 235 Ga. 20 (218 SE2d 779) (1975); s. c., 235 Ga. 774 (221 SE2d 455) (1975); *Barrow v. State,* 235 Ga. 635 (221 SE2d 416) (1975); *Spencer v. State,* 236 Ga. 697 (224 SE2d 910) (1976); *Davis v. State,* 236 Ga. 804 (225 SE2d 241) (1976); *Birt v. State,* 236 Ga. 815 (225 SE2d 248) (1976); *Banks v. State,* 237 Ga. 325 (227 SE2d 380) (1976); *Harris v. State,* 237 Ga. 718 (1976); *Hill v. State,* 237 Ga. 610 (229 SE2d 419) (1976).