**Johnny Mack WESTBROOK, Petitioner,**

v.

**Walter B. ZANT, Warden, Georgia Diagnostic and Classification Center, Respondent.**

**Civ. A. No. 81–37–MAC.**

United States District Court, M. D. Georgia, Macon Division.

July 29, 1981.

---

Steven H. Sadow, Atlanta, Ga., for petitioner.

Harrison Kohler, Atlanta, Ga., for respondent.

## ORDER

OWENS, Chief Judge.

On denial of habeas relief by this court petitioner filed his notice of appeal and, pursuant to 28 U.S.C.A. § 2253, applied for a certificate of probable cause to authorize appeal in forma pauperis of this court's judgment. By order dated July 10, 1981, petitioner was then instructed to inform the court within fifteen (15) days of exactly what merit existed in the appeal and to specifically state those constitutional questions raised by the appeal. A final determination concerning petitioner's application was withheld until this information could be considered by the court. The requested brief was submitted on July 24, 1981, and the court having carefully considered the arguments advanced in that brief, now makes a final determination on petitioner's application for a certificate of probable cause.

Petitioner's Brief In Support of Application For Certificate of Probable Cause to Authorize Appeal (Brief) does not attempt to reargue every allegation of the habeas petition, although petitioner naturally believes there to be merit to them all. Instead, petitioner attempts to "merely highlight a few of the substantial questions which he intends to address on appeal" (Brief p. 2) to wit: the *Godfrey* issue, the denial of funds for expert witnesses, the ineffective assistance of counsel and this court's refusal to allow presentation of evidence on behalf of petitioner.

As to the allegations of denial of funds for expert witnesses and ineffective assistance of counsel, no further consideration is necessary. As stated in the court's order of June 11, 1981, petitioner has received a full and fair hearing on the merits as to these claims and petitioner's most recent brief offers nothing that would suggest that this assessment be changed, nor that these allegations contain *any* arguable merit.

█ In response to petitioner's allegation that this court improperly refused to allow the presentation of evidence based on its erroneous application of 28 U.S.C.A. § 2254(d), petitioner is referred to those Fifth Circuit cases which have considered *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). *See, e. g., West v. State of Louisiana*, 478 F.2d 1026 at 1031–1032 (5th Cir. 1973). An evidentiary hearing is clearly *not* required where as in the instant case there has been a full and fair development of the factual issues at the state level.

This leaves petitioner's allegation that both the trial court and Georgia Supreme Court improperly applied and considered Georgia Code Ann. § 27–2434.1(b)(7)—"the § b(7) aggravating circumstance." Section b(7) states: "[the capital offense] was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim."

According to petitioner, *Godfrey v. United States,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980) required the trial court to instruct the jury on a narrow construction of the aggravating circumstances "that channels the jury's discretion by 'clear and objective standards' that provide 'specific and detailed guidance' to the jury" (Brief p. 2). Petitioner interprets *Godfrey* as rejecting the practice of reading the text of the § b(7) circumstance without more. Next, petitioner contends that *Godfrey* required the Georgia Supreme Court "to delimit the application of § b(7) by applying the three definitional standards outlined in the ... opinion" (Brief pp. 2–3). These standards were developed by the Georgia Supreme Court and considered by the United States Supreme Court in *Godfrey.*

After studying *Godfrey* and comparing the facts of that case with those of petitioner's case, this court is convinced that petitioner has misinterpreted that decision and failed to properly apply it to the facts of the present case.

■ As to the trial court, *Godfrey* does not require that the court do any more than state exactly what the statute says. The concern in *Godfrey* is that the death sentence not be inflicted arbitrarily, without regard for the meaning of the first phrase in § b(7), *i. e.,* "outrageously or wantonly vile, horrible or inhuman." However, the second phrase in the statute gives the required meaning to these terms; something is vile, horrible or inhuman if it "involved torture, depravity of mind, or an aggravated battery to the victim." The jury in *Godfrey* obviously did not use the second phrase to define the terms of the first as is evident from both the wording of the death

sentence (quoting only the first phrase of the statute) and the facts of the case itself (a shotgun murder of defendant's wife and mother-in-law following a heated argument and a history of family problems, with no prior torture or physical abuse of the victims within the contemplation of the statute). In contrast, the jury in petitioner's case clearly used the *entire* statute in making its finding of a § b(7) circumstance (Exhibit 5, p. 503), and all of the evidence—including petitioner's corroborated confession—reveals a vicious, inhuman double murder preceded by the rape of one of the elderly victims and the kidnapping and savage physical abuse of both of the female victims.

As to the Georgia Supreme Court's role when a § b(7) circumstance is involved, the following relevant language of the Supreme Court of the United States appears in *Godfrey:*

"[T]he Georgia Supreme Court had by 1977 reached three separate but consistent conclusions respecting the § (b)(7) aggravating circumstance. The first was that the evidence that the offense was 'outrageously or wantonly vile, horrible or inhuman' had to demonstrate 'torture, depravity of mind, or an aggravated battery to the victim.' The second was that the phrase, 'depravity of mind,' comprehended only the kind of mental state that led the murderer to torture or to commit an aggravated battery before killing his victim. The third ... was that the word, 'torture,' must be construed in pari materia with 'aggravated battery' so as to require evidence of serious physical abuse of the victim before death." 446 U.S. at 431, 100 S.Ct. at 1766. (citations omitted).

The court in *Godfrey* stated the issue as being whether the Georgia Supreme Court had, *in light of the facts and circumstances of that case,* properly considered these three definitional standards. *Id.* at 432, 100 S.Ct. at 1767.

■ There can be no argument that the facts of petitioner's case meet all three of these standards. Unlike *Godfrey,* there is

an over-abundance of evidence in this case of serious physical abuse and aggravated battery preceding the two murders.

In *Harris v. State*, 237 Ga. 718, 230 S.E.2d 1 (1976) the Georgia Supreme Court determined that it would restrict its approval of the death penalty under the § b(7) circumstance to those cases that lie at the core and not the periphery of the statutory language. If petitioner's case were on the periphery of that universe of circumstances contemplated by § b(7) then the same problems might exist as existed in *Godfrey*, and petitioner's charges as to the use of § b(7) in his case might possess some arguable merit. However, this case clearly lies at the *core* of those circumstances contemplated by the statute. As a result, petitioner can have no possibly meritorious complaint as to the trial court's instruction or the Supreme Court of Georgia's consideration on appeal.

Petitioner having presented no meritorious claims in its brief, this court sees no reason to authorize an appeal of this case. In its best judgment a further appeal by petitioner would be legally frivolous.

Accordingly, petitioner's application for certificate of probable cause to authorize an appeal in forma pauperis is hereby DENIED.

SO ORDERED, this 28th day of July, 1981.