**Horace William DIX, Petitioner,**

v.

**Lanson NEWSOME, Warden, Georgia State Prison, Respondent.**

**Civ. A. No. C80–826A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

March 20, 1984.

This habeas petition, which raises fifteen (15) grounds, was initially referred to the Magistrate who conducted an evidentiary hearing and directed the parties to file briefs. On August 17, 1983, the Magistrate issued his Report and Recommendation addressing each ground. The Magistrate recommended that petitioner's habeas corpus petition be denied on all grounds except the first ground—incompetency to stand trial. Both parties have filed objections to the Magistrate's Report and Recommendation. Thus, this matter is now before the court on the Magistrate's Report and Recommendation.

## BACKGROUND

On the morning of September 8, 1974, at approximately 11:00 a.m., Dixie Jordan, the murder victim, and her mother, Mrs. Alpha McPherson, arrived at Ms. Jordan's apartment. Horace Dix, the defendant and ex-husband of Dixie Jordan, was waiting in the driveway. Ms. Jordan said that it would be better if she spoke with the defendant alone, so Dixie's mother left them at Dixie's apartment and went to visit another daughter, Barbara. Shortly thereafter, Dixie called her mother and asked her to return to Dixie's apartment for dinner around 4:00 p.m. because Dix wanted to talk to her.

At approximately 3:00 p.m., Barbara called Dixie's apartment. The defendant answered the telephone and told Barbara that Dixie stepped out to visit a neighbor. Barbara asked for Dixie to return her call. Receiving no call, Barbara called Dixie's apartment again. Dix again answered the telephone, and Barbara inquired as to Dixie's whereabouts. The defendant did not answer her question, but instead requested that Dixie's mother come over to the apartment. Dixie's mother (Mrs. McPherson), Barbara, and Rita, Barbara's fourteen year old daughter, then drove over to Dixie's apartment.

When they arrived at Dixie's apartment, the defendant opened the door. He stated that Dixie was in the bedroom resting. Dixie's mother tried to enter the bedroom

Joseph M. Nursey, Millard C. Farmer, Jr., August Siemon, Atlanta, Ga., for petitioner.

William B. Hill, Susan V. Boleyn, Atlanta, Ga., for respondent.

## MEMORANDUM OPINION AND ORDER OF COURT

### HORACE T. WARD, District Judge.

Petitioner, a state prisoner currently incarcerated at the Georgia State Prison, Reidsville, Georgia, has filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner seeks habeas corpus relief from the sentence of death for the offense of murder imposed upon him by the Superior Court of Clayton County, Georgia in March 1975. Petitioner was, at the same trial, convicted on three additional charges of kidnapping.

but the door was locked. Mrs. McPherson then called for Dixie but there was no response. At this time, Dix said, "Don't open that door ... You are not messing my plans up." He had a gun drawn and was holding Rita in front of him. When Dixie's mother asked Dix why he was holding them at gunpoint, he replied that they were all going to Carrollton, Georgia. When asked if Barbara and Rita could stay in the apartment, he stated that they could not because if they did they would call the police. Dix then concealed his gun and took Mrs. McPherson, Barbara, and Rita to Dixie's car.

Later, while driving, Rita wanted something to drink. Dix was eventually persuaded to stop at a store. There, Mrs. McPherson was told to get out of the car to buy drinks and cigarettes. Mrs. McPherson got out and then refused to get back into the car even though Dix commanded her to do so at gunpoint. Mrs. McPherson then told Barbara and Rita to get out of the car. When the defendant tried to block their exit, Mrs. McPherson said, "Horace, just don't start no stuff here." At about this time another car pulled into the store, and Barbara and Rita got out of the car. Mrs. McPherson then went inside the store to use the telephone. At that time Barbara asked the defendant if there was anything wrong with Dixie. Dix replied, "Yes, I hurt her." He then stated, "If this gets out, I'll kill you, Alpha, and Rita." Dix then drove off. Mrs. McPherson called another daughter, Charlotte, and told her to go to Dixie's apartment and check the bedroom.

When Dixie's room was entered, her body was found in the bed wrapped in a bed sheet. The testimony of Dr. Joseph Burton, forensic pathologist and medical examiner, indicated that Ms. Jordan had been struck with a blunt object in the area of her jaw, and then strangled. Several cuts were also made in her throat, and several superficial stab marks were made in her chest and abdomen. All of these blows, cuts and wounds, including strangulation, were inflicted while Ms. Jordan was still alive. Dr. Burton testified that Ms. Jordan died of three stab wounds to the heart.

At the trial, the defendant offered evidence which was intended to support his insanity defense. He contended that he was not mentally responsible at the time of the offense because of residual damage from earlier head injuries and prior mental and emotional problems. The jury found sufficient evidence to convict the defendant, finding him guilty of murder and three counts of kidnapping. After the sentencing hearing, at which the defendant testified, the jury recommended the imposition of the death penalty based upon their conclusion that Dixie Jordan had been subjected to inhuman torture and serious physical abuse prior to her death.

On direct appeal to the Georgia Supreme Court, petitioner's conviction and sentence were affirmed. *Dix v. State*, 238 Ga. 209, 232 S.E.2d 47 (1977). Apparently, no immediate petition for writ of certiorari was filed at that time in the United States Supreme Court.

On June 9, 1977, a habeas corpus petition was filed in behalf of Mr. Dix in the Superior Court of Clayton County, Georgia. By Order dated December 29, 1977, that petition was dismissed. No hearing was held in this state habeas petition. On January 30, 1978, petitioner filed notice of appeal from the dismissal of this first state habeas corpus petition. On February 14, 1978, the Georgia Supreme Court denied petitioner's application for a certificate of probable cause.

On February 15, 1978, petitioner applied for clemency to the Georgia Board of Pardons and Paroles. An order staying petitioner's second scheduled execution was granted on March 21, 1978 by the Georgia Board of Pardons and Paroles pending review of the application. Later, on May 17, 1978, the Georgia Board of Pardons and Paroles denied petitioner's application.

On May 30, 1978, petitioner filed a petition for writ of habeas corpus with a stay of execution application in the Superior Court of Tattnall County, Georgia. A

simultaneous petition for writ of habeas corpus was filed at the same time in this court. The stay of execution was granted by the Tattnall County Superior Court, and the federal habeas corpus petition was voluntarily dismissed on May 30, 1978.

Previously, on March 12, 1978, petitioner had filed an extraordinary motion for new trial in the Clayton County Superior Court. A two-day hearing was held on the extraordinary motion on March 19 and 20, 1979. By Order dated March 21, 1979, the extraordinary motion for a new trial was denied. Later, on October 16, 1979, the Georgia Supreme Court affirmed the denial of the extraordinary motion for a new trial. *Dix v. State*, 244 Ga. 464, 260 S.E.2d 863 (1979). Following this adverse decision, Dix petitioned the United States Supreme Court for writ of certiorari. The writ was denied on March 24, 1980. *Dix v. Georgia*, 445 U.S. 946, 100 S.Ct. 1346, 63 L.Ed.2d 781 (1980).

On April 25, 1980, the State of Georgia reset petitioner's execution date for May 15, 1980. The instant petition was filed in this court on May 14, 1980. Accompanying this petition was an application for a stay of execution. By Order dated May 14, 1980, petitioner's scheduled execution was stayed by the district court. Following the stay order, the parties in this action filed briefs which fully addressed the grounds alleged. On August 4, 1981, the Magistrate issued an order directing that the current petition be stayed pending exhaustion of petitioner's available state remedies with regard to his challenge based upon ineffective assistance of counsel.

Thereafter, on September 3, 1981, petitioner filed a habeas corpus petition in the Superior Court of Butts County, Georgia. In that petition, he raised the same grounds pertaining to ineffective assistance of counsel as are currently raised in this petition. On November 15, 1982, this court was informed of the Georgia Supreme Court's affirmance of the Butts County Superior Court's denial of the additional habeas petition. The Georgia Supreme Court found that for purposes of any federal habeas corpus action, petition-er's claims which he raised in his successive petition, were deemed exhausted. *Dix v. Zant*, 249 Ga. 810, 294 S.E.2d 527 (1982).

On August 17, 1983, the Magistrate issued his Report and Recommendation, and on September 22, 1983, this court heard oral argument on the parties' objections to the Magistrate's Report and Recommendation.

Petitioner raised the following grounds, alleging that: (1) he was incompetent to stand trial; (2) the jury charge on the burden of proof improperly shifted the burden to Dix on an essential element of the crime; (3) the aggravating circumstance on which Dix's sentence is based is unconstitutionally overbroad and vague; (4) the death penalty as applied to Dix is an arbitrary and capricious infliction; (5) death is an excessive penalty; (6) death is cruel and unusual in light of all the circumstances, including mitigating circumstances; (7) the death penalty was given on the basis of fundamentally unfair proceedings; (8) he had ineffective assistance of counsel; (9) he was deprived of due process in that the jury was not given adequate guidance concerning standards governing their deliberation on Dix's sentence; (10) the failure to transcribe closing argument of the trial was constitutional error; (11) Georgia has an inadequate statutory appellate review procedure; (12) electrocution inflicts unnecessary torture and torment; (13) a denial of funds for use in the state habeas corpus proceeding amounted to a denial of equal protection; (14) Dix was indicted by an unconstitutionally composed grand jury; and (15) Dix was convicted and sentenced by an unconstitutionally composed traverse jury. Each of these grounds was addressed by the Magistrate and will be discussed herein.

■ In reviewing the allegations of this petition, the court's inquiry is limited. Its role is to examine those aspects of the trial affecting petitioner's federal constitutional rights. *Corn v. Zant*, 708 F.2d 549, 555 (11th Cir.1983). In order to grant habeas corpus relief, it must be determined that

petitioner's trial was fundamentally unfair. *Id.*

## I. INCOMPETENCE TO STAND TRIAL

█ The first ground for habeas relief raised by the petitioner is that he was mentally incompetent to stand trial, and therefore, his subsequent conviction contravenes his constitutional right to due process of law. The Magistrate found that the testimony at the defendant's trial raised a *bona fide* doubt as to the defendant's competency at the time of trial, and therefore, pursuant to *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), the trial judge was obligated to *sua sponte* conduct a separate hearing, held in compliance with state law,[1] to determine whether the defendant was in fact competent. The Magistrate thus recommended that the writ of habeas corpus issue on this ground and that the grant of the writ be stayed for a reasonable time pending a determination of whether a meaningful *nunc pro tunc* competency hearing could be held. If a hearing could not be held, then petitioner would be entitled to a new trial, if competent.

The respondent has filed objections to the Magistrate's findings and recommendations on this ground contending that the trial court did not err in not *sua sponte* ordering a competency hearing under *Pate* because the evidence before the court did not and would not have raised a *bona fide* doubt in the mind of a reasonable trial judge as to petitioner's competency.

It is well settled that it is a violation of an accused's constitutional rights to be tried in a criminal case while he is legally incompetent. *Bishop v. United States*, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956). Furthermore, the appropriate test for determining the defendant's competency is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

It appears to be undisputed that a special plea of insanity was filed by petitioner's attorneys prior to trial. Based on this special plea, Chief Judge Harold R. Banke ordered the petitioner sent to Central State Hospital for tests and evaluation in order to determine: 1) whether the petitioner suffered from any mental disease or defects that would impair him to the extent that he would be unable to assist his counsel in the preparation of his defense; 2) whether at the time the alleged offenses were committed, petitioner knew the difference between right and wrong; and 3) whether the defendant is suffering from any mental disease or defect which might influence his actions or mitigate the circumstances of the offense. By letter dated February 17, 1975, Dr. Bosch, Superintendent of Central State Hospital, informed Judge Banke that the tests, examination and evaluation of petitioner had been completed and that they felt that petitioner was legally sane and mentally competent to stand trial. Apparently, based on this examination and evaluation, petitioner's attorneys then withdrew the special plea of insanity prior to the trial.

The court notes that Judge Banke took reasonable measures in an attempt to insure that the defendant was mentally competent to stand trial, however, the issue before this court is whether there has been a *Pate* procedural violation which denied defendant a fair trial.

In *Pate v. Robinson, supra,* the Supreme Court held that where the evidence presented to the trial court raises a *bona fide* doubt as to the defendant's competency to stand trial, the court's failure to *sua sponte* conduct a separate hearing to make further inquiry into defendant's competency denies him his constitutional right to a fair trial. 383 U.S. at 385, 86 S.Ct. at 842.

---

**1.** *Ga.Code Ann.* § 27–1502 (recodified as O.C.G.A. § 17–7–130) provides in pertinent part:

 (a) Whenever a plea is filed that a defendant in a criminal case is mentally incompetent to stand trial, it shall be the duty of the court to cause the issue of the defendant's mental competency to stand trial to be first tried by a special jury.

Thus, the question before this court is whether the trial judge had before him testimonial evidence or any other information which, objectively considered, "should reasonably have raised a doubt about defendant's competency and alerted him to the possibility that the defendant could neither understand the proceedings or appreciate their significance, nor rationally aid his attorney in his defense." *Lokos v. Capps,* 625 F.2d 1258, 1261 (5th Cir.1980). The Supreme Court has not articulated a general standard for the nature or quantum of evidence necessary to trigger a separate competency hearing, however, the court focused on three factors which should be considered: 1) the existence of a history of irrational behavior; 2) defendant's demeanor at trial; and 3) a prior medical opinion. *Drope v. Missouri,* 420 U.S. 162, 180, 95 S.Ct. 896, 908, 43 L.Ed.2d 103 (1975); *Lokos v. Capps, supra,* at 1261; *Chenault v. Stynchcombe,* 546 F.2d 1191, 1192–3 (5th Cir.1977).

The first important factor the court will address is the existence of a history of irrational behavior on the part of the petitioner. In the instant case, the Magistrate first made reference to certain testimony given by laywitnesses, which evidence the Magistrate believed could reasonably have served as a basis for inquiry by the trial court as to whether Dix was competent at that time, although the Magistrate did not contend that the laywitness testimony was in and of itself sufficient to raise a *bona fide* doubt. Apparently, the Magistrate determined that the respective testimony tended to establish some history of irrational behavior.

Upon examination of the testimony of these laywitnesses, the court believes that the Magistrate has intertwined the evidence which would support Dix's defense of insanity at the time of the commission of the crime with the evidence which would tend to establish a history of irrational behavior.

For example, on page 10 of the Report and Recommendation, the Magistrate stated that the testimony of several laywitnesses indicated that Dix was disoriented, exhibited bizarre behavior, was unstable, and suffered a severe personality change after a head injury in the Navy (Trial Transcript 206, 251, 260, 261, 578, 581, 670, hereinafter T.Tr.), and that these allegations could reasonably have served as a basis for inquiry into Dix's competency at the time of trial. However, with the exception of the testimony that petitioner suffered a personality change, testimony with respect to his disorientation, bizarre behavior, and instability referred solely to the circumstances surrounding the crime, which evidence would go to his defense of insanity at the time of the commission of the crime. This evidence did not tend to establish a history of irrational behavior.

The court now turns to the testimony with respect to petitioner's personality change. Petitioner's mother testified that Dix's personality changed after he came back from the Navy such that he "just had a split personality" (T.Tr. 580–581), and that he would "say ugly things to me" and hold his head "one sided like kinda like that, you know" (T.Tr. 578). There was also the testimony of Ms. Dorothy Polk that petitioner was "distant" after he came back from the Navy and that he would act "real sweet to his mother and daddy and then again he would just be real ugly" (T.Tr. 670). This court concludes that this evidence, standing alone, does not tend to establish a history of irrational behavior and is insufficient to reasonably raise a *bona fide* doubt as to Dix's competency at the time of trial. *Cf. Pate v. Robinson, supra; Drope v. Missouri, supra; Lokos v. Capps, supra.*

The second factor the court must consider in determining whether the judge should have *sua sponte* ordered a separate competency hearing is the petitioner's demeanor at trial. With respect to this factor, there is absolutely no evidence in the record to indicate that Dix's demeanor at trial created any suspicion of mental incompetency.

Moreover, the court notes the comments of petitioner's trial counsel in the "Memo-

randum to be Attached to the Report of the Trial Judge," which document is attached to the respondent's objections to the Magistrate's Report and Recommendation. Of particular significance are the following comments:

*The defendant was able to discuss his defense before and during the course of the trial,* but his reaction to the import of the evidence being presented against him was so flat that he had to be prodded into giving any effective assistance. After Doctor Sapp diagnosed his mental condition, he prescribed medication for the defendant to help overcome the lapses and other adverse affects of his injury-related mental disorder. While this medication did not interfere with presenting his defense to the issues involved, the symptoms of the disease itself presented a frustrating challenge. This was made increasingly difficult in view of the invocation of the rule as to the sequestration of witnesses. His mother and other relatives were to be used as witnesses in behalf of defendant and the invoking of the rule effectively deprived defense counsel of having the assistance of these witnesses during the progress of the presentation of the evidence by the State. (emphasis added).

The next paragraph of the memorandum states:

Paragraph 12(a) asks the question as to the ability of the defendant to distinguish between right from wrong. *Judge Banke indicated at the time of the trial that he was able to make such a distinction and this is true.* At the time of the alleged offense, however, Doctor Sapp testified that in his opinion if the defendant caused the homicide of the victim, he had no way of distinguishing between right and wrong. Doctor Bosch, called as a rebuttal witness for the State, testified that while he did diagnose the defendant as having a mental disorder and in need of further treatment, that he had no information upon which to make a determination as to the ability of the defendant to distinguish between right

and wrong at the time his former wife was slain. (emphasis added).

The court believes these comments to be crucial because they indicate that petitioner's own trial counsel, who apparently had the closest contact with Dix during the trial, felt that Dix was competent to stand trial. Had this not been the case, counsel could have renewed the special plea of insanity or moved to have petitioner re-examined because of an inability to assist counsel with the defense of his case or to understand the nature of the proceedings against him. Evidently defense counsel felt that Dix was legally competent, and counsel then proceeded to trial on the general defense of insanity at the time of the commission of the crime.

The third important factor to be considered is prior medical opinion. The record shows that both Dr. Sapp and Dr. Bosch testified that Dix had a mental disorder which probably resulted from the head injury he sustained while in the Navy. However, Dr. Sapp diagnosed Dix as suffering from a psychotic condition, paranoid schizophrenia and an organic brain syndrome associated with trauma, and seizure disorder, petit mal and psychomotor (T.Tr. 702–703), while Dr. Bosch diagnosed Dix's condition as depressive neurosis (T.Tr. 810). Furthermore, both doctors testified that Dix had an abnormal electroencephalogram (T.Tr. 622, 880), that there was a possibility of psychomotor epilepsy (T.Tr. 880), and that someone who committed a crime while having a psychomotor seizure would likely not remember any incidents of the crime. (T.Tr. 719–720, 853, 880).

The record also shows, however, that Dr. Bosch, after conducting a physical and neurological examination and evaluation, felt that Dix was competent to stand trial. The court notes that Dr. Bosch testified that during the time he was with Dix, Dix knew what was going on, understood the questions, and answered the questions. Dr. Bosch also stated that Dix's reality contact was good and that at the time Dix was at Central State Hospital he knew the difference between right and wrong (T.Tr. 811).

Dr. Sapp also testified that Dix was psychotic, but when Dr. Sapp visited him Dix recognized Dr. Sapp, knew his name, knew where he was, and was able to respond to questions. (T.Tr. 734).

Viewing all of the laywitness and psychiatric witness testimony, the court finds that most of the evidence presented focused on whether Dix was able to distinguish right from wrong at the time, immediately before, and after the commission of the crime, and not on whether petitioner was competent to stand trial. In fact, the court believes that the evidence presented which did focus on Dix's competency to stand trial tended to establish that Dix was competent to stand trial.

In sum, the court concludes that while Dix had a mental disorder which resulted from a head injury while in the Navy, said disorder did not prevent Dix from assisting his trial counsel with the defense of his case and from understanding the nature of the proceedings against him. The court further concludes that neither the petitioner's demeanor at trial, nor the testimony of laywitnesses or of Drs. Sapp and Bosch reasonably raised or should have reasonably raised a *bona fide* doubt in the mind of the trial judge as to Dix's competency to stand trial, and therefore the trial court was not obligated to *sua sponte* conduct a separate competency hearing as required by *Pate v. Robinson, supra. Cf. Chenault v. Stynchcombe, supra.* For the foregoing reasons, habeas relief is DENIED on this ground.[2]

## II. THE SANDSTROM ISSUE

As his second ground for relief, petitioner contends that the jury instructions given by the trial court permitted the prosecution to prove its case without establishing all the essential elements of the crime beyond a reasonable doubt, and that the instructions shifted the burden onto the petitioner of proving lack of intent or malice.

**2.** Because of this ruling, the court need not address the issue of whether a meaningful *nunc*

■ It is well settled that the due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Thus, a jury instruction which involves a presumption that shifts to the accused the burden of proving one or more essential elements of the crime is unconstitutional. *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

The Magistrate concluded that the trial court's instructions to the jury at the guilt/innocence phase of petitioner's trial were not unconstitutionally burden-shifting. Petitioner has objected to this finding and contends that the instructions on malice given by the court were substantially similar to the charge on malice found by this circuit to be unconstitutionally burden-shifting, citing *Lamb v. Jernigan*, 683 F.2d 1332, 1341 (11th Cir.1982); *cert. den.,* —— U.S. ——, 103 S.Ct. 1276, 75 L.Ed.2d 496 (1983).

■■ The court's duty in analyzing a *Sandstorm* claim is to examine the crime for which the petitioner has been convicted, and then examine the challenged jury charges to determine if said charges impermissibly and unconstitutionally shift the burden of proof to the petitioner to disprove intent or malice. *See Lamb v. Jernigan, supra,* at 1335–6. In examining the charges for possible constitutional violations, the court must determine "whether a reasonable jury might have failed to understand, from the entire charge, that there was a rebuttable presumption of intent or malice and that they were free to weigh all the evidence." *Corn v. Zant*, 708 F.2d 549, 558 (11th Cir.1983), citing *Sandstrom v. Montana, supra.*

*pro tunc* competency hearing could be held.

The court now turns to an examination of the Georgia statute on murder and the actual jury instructions given by the trial court. Under the Georgia statute defining murder, *Ga.Code Ann.* § 26–1101 (recodified as O.C.G.A. § 16–5–1), malice and intent are essential elements of the crime of murder, which elements must be proven beyond a reasonable doubt. *In Re Winship, supra.* At petitioner's trial, the trial court instructed the jury on the essential elements of malice as follows:

Now, as I have stated, the offense charged against the defendant in count number one in this bill of indictment is that of murder.

And, in that connection, I charge you that a person commits murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being.

Express malice is that deliberate intention unlawfully to take away the life of a fellow creature which is manifested by external circumstances capable of proof. Malice shall be implied where no considerable provocation appears and where all of the circumstances of the killing show an abandon and malignant heart.

Malice is an essential element in murder. And, it must exist before any homicide can be murder. Malice, in its legal sense, is not necessarily ill will or hatred. It is the unlawful, deliberate intention, to kill a human being without justification or mitigation or excuse, which intention must exist at the time of killing.

It is not necessary, however, that this unlawful deliberate intention should exist for any particular length of time before the killing. If it enters the mind of a slayer, the moment before he inflicts the fatal wound, that is sufficient.

*The law presumes every intentional homicide to be malicious until the contrary appears from the circumstances of alleviation, justification, mitigation or excuse.*

*The burden is on a slayer whenever an intentional homicide has been proved to make out such circumstances to the satisfaction of the Jury unless such circumstances appear from the evidence produced against the slayer.* If such evidence produced against the slayer, if there be such, discloses the homicide was done without malice, then this presumption that the homicide is malicious does not exist.

*If, however, the evidence produced against a slayer, if there be such, does not disclose that the killing was done without malice, then it is incumbent upon the slayer to show that it was done without malice.*

I charge you, however, that this presumption which arises against the slayer where an intentional homicide is shown does not arise against a slayer until it be first shown to a moral and reasonable certainty and beyond a reasonable doubt that the defendant was the intentional slayer. Unless, it appears from the evidence beyond a reasonable doubt and to a moral and reasonable certainty, that this defendant is the intentional slayer, this presumption does not arise in this case and has no application to the case. And, you will not consider such a rule in passing upon the case.

*When and if a killing is proved to your satisfaction to be the intentional act of the defendant, himself, the presumption of innocence with which he enters upon the trial is removed from him. And, the burden is upon him to justify or mitigate the homicide, unless the evidence introduced against him shows justification or mitigation.* But, as I have charged you heretofore, the evidence of justification or mitigation may be found in the evidence produced against him. *If there be no evidence introduced to show justification or mitigation and if the evidence introduced shows the homicide to have been committed as charged in the indictment, the burden will then be upon the defendant to show mitigation or excuse.* (Emphasis added).

The court initially notes that most of the jury instructions given in this case are sub-

stantially identical to the charge which was upheld in *Corn v. Zant,* 708 F.2d 549 (11th Cir.1983), and *Corn* is the controlling authority in this circuit to date. Therefore, the court will only address the underlined portions of the jury charge, as those are the only instructions which are somewhat different from those in *Corn,* and upon which a possible *Sandstrom* violation might be based.[3]

█ The underlined jury instructions essentially state that "the burden is on the defendant" or "it is incumbent upon the defendant" to show "justification or mitigation," or to show "that the killing was done without malice" when the evidence produced against him shows the homicide to have been committed intentionally. On the other hand, the comparative instructions in *Corn* state that "the defendant *may* show justification or mitigation" or "*may* show that the killing was done without malice," "but he is not required to do so."

The court in *Corn* held that the cautionary language "may" ... "but is not required to do so" was at most a permissible inference that the defendant could, if he so chose, introduce mitigating evidence, and therefore the charge as a whole did not impermissibly shift the burden of proof to the defendant in violation of his due process rights. 708 F.2d at 559. The court also distinguished the instructions in *Corn* from those in *Lamb v. Jernigan, supra.*

In *Lamb,* the Court found a charge which stated that "the law presumes that every homicide is malicious until the contrary appears from circumstances of alleviation, excuse or justification," coupled with "it is incumbent upon the accused to make out such circumstances to your satisfaction unless they appear from the evidence produced against him ..." to be unconstitu-

tionally burden-shifting when accompanied solely by the standard charge on burden of proof in a criminal case. 683 F.2d at 1341.

The Court in *Corn* stated that the *Corn* jury heard a charge "replete with cautious explanations that refute[d] Corn's claim that an irrebuttable presumption weighed against him," whereas there was no comparative curative language in *Lamb.* 708 F.2d at 559.

In the instant case, the court finds that several underlined portions of the jury instructions are similar to those instructions found to be unconstitutionally burden-shifting in *Lamb.* Furthermore, the challenged underlined instruction,

When and if a killing is proved to your satisfaction to be the intentional act of the defendant, himself, the presumption of innocence with which he enters upon the trial is removed from him. And, the burden is upon him to justify or mitigate the homicide, unless the evidence introduced against him shows justification or mitigation ....

is virtually identical to the instructions which the Fifth Circuit[4] found to be unconstitutionally burden-shifting in *Tennon v. Ricketts,* 642 F.2d 161 (5th Cir.1981), and *Holloway v. McElroy,* 632 F.2d 605 (5th Cir.1980).

Thus, based on the controlling authority in this circuit, the aforementioned underlined jury instructions appear to impermissibly shift the burden on to the defendant to disprove malice.

The court, however, does recognize its obligation to review the challenged instructions in the context of the overall charge, and not in isolation. *Cupp v. Naughten,* 414 U.S. 141, 146–147, 94 S.Ct. 396, 400–401, 38 L.Ed.2d 368 (1973). Upon examina-

---

**3.** The underlined instructions represent most of the instructions challenged by the petitioner. Any instructions not underlined or included herein were substantially, if not completely, identical to the instructions which were upheld in *Corn.* The court further notes that the last three paragraphs of the charges on intent (T.Tr. 1032) have been challenged in several cases and have been upheld as not unconstitutionally burden-shifting. *Tucker v. Francis,* 723 F.2d 1504

(11th Cir.1984); *Corn v. Zant, supra.* Therefore, the court need not address the validity of these instructions.

**4.** The Fifth Circuit decisions rendered prior to October 1, 1981 are adopted as precedent in the Eleventh Circuit. *Bonner v. Prichard,* 661 F.2d 1206 (11th Cir.1981).

tion of the jury instructions, the court notes that some of the same curative language present in the *Corn* instructions is included in the jury instructions in the case at bar.[5] Nevertheless, this court believes that *Corn* goes much farther in giving cautionary explanations[6] which could create a permissible inference that defendant could produce mitigating evidence but was not required to do so.

In this case, the general burden allocation instructions, and the instruction that criminal intent should not be presumed, read with the aforementioned cautionary instructions, see n. 5, were insufficient to rectify the possible burden-shifting instruction on malice. A reasonable jury could have concluded that petitioner had the burden of persuasion and not just the burden of mere production of evidence to show that the killing was done without malice. For the foregoing reasons, this court is compelled to conclude that the jury charge as a whole operated to impermissibly shift the burden of proof to the defendant on an essential element of the crime of murder in violation of petitioner's due process rights. Accordingly, petitioner's conviction and sentence must be set aside unless it is determined that the erroneous jury charge was harmless beyond a reasonable doubt. *Mason v. Balkcom*, 669 F.2d 222, 226 (5th Cir. Unit B 1982), *cert. den.*, —— U.S. ——, 103 S.Ct. 1260, 75 L.Ed.2d 487 (1983).[7]

In *Mason*, the Court stated that the unconstitutional, erroneous jury charge might be held harmless beyond a reasonable doubt if: 1) "the evidence of guilt is so overwhelming that the error could not have been a contributing factor in the jury's decision to convict"; or 2) the unconstitutional, burden-shifting instruction "shifts the burden on an element that is not at issue in the trial." 669 F.2d at 227.

At the outset, the court notes that the second standard is inapplicable to this case because the malice element was clearly at issue in the trial. The court must therefore focus on whether the evidence of guilt in this case was so overwhelming. The court concludes that it was.

The jury had overwhelming evidence that Dix was at Dixie's apartment on the day of the murder, at around 11:00 a.m. At that time he was wearing a blue work shirt and pants. Later that day shortly after 3:00 p.m., Mrs. McPherson, Barbara, and Rita arrived at Dixie's apartment. At this time, Dix was wearing a brown shirt and brown striped pants. Dix stated that Dixie was in the bedroom resting. Mrs. McPherson tried to enter Dixie's bedroom but the door was locked. She then called to Dixie and there was no response. At this point, the defendant pulled a gun and took the three women hostage, taking them to Dixie's car. There was also testimony from Barbara that when asked if there was anything wrong with Dixie, the defendant replied, "Yes, I hurt her." Also, during the time the three women were held hostage, Dix referred at least three times to avoiding contact with the police. The evidence fur-

---

**5.** Both the *Corn* instructions and the instructions in the case *sub judice* contained the following cautionary instructions:

> If such evidence produced against the accused, if there be such, discloses the homicide was done without malice, then this presumption that the homicide is malicious does not exist.
>
> . . . . .
>
> This presumption ... does not arise against the slayer unless it be first shown to a moral and reasonable certainty and beyond a reasonable doubt that the defendant was the intentional slayer.

**6.** The trial court also specifically instructed the *Corn* jury that "the burden is on the State to prove such intent beyond a reasonable doubt

and the burden is not on the defendant to disprove intention." 708 F.2d at 569. As previously stated, the Court in *Corn* found that the jury charge was replete with cautionary explanations. The Court specifically noted the instruction in this footnote, which was given with the general burden allocation instructions, the instruction that criminal intent should not be presumed, the cautionary instructions referred to in n. 5 herein, and the "may" ... "but is not required to do so" language.

**7.** *Mason v. Balkcom* is binding on the Eleventh Circuit as a post-September 30, 1981 decision of a Unit B panel of the former Fifth Circuit. *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982).

ther shows that after Dixie's body was found, a bloodstained ashtray with defendant's fingerprints was found. Also, the bloodstained blue work shirt and pants worn by Dix earlier that morning on the day of the murder were found under a towel behind the clothes hamper. The blood was the same type as the victim's. Finally, the evidence shows that for approximately two weeks prior to his surrender at the sheriff's office in Carroll County, Dix had evaded efforts by law enforcement officers to apprehend him.

Viewing the totality of the evidence presented, this court cannot conclude that the unconstitutional burden-shifting instructions were a contributing factor in the jury's decision to convict the petitioner. Accordingly, habeas relief is DENIED on this ground.

## III. THE GODFREY V. GEORGIA ISSUE

As his third ground for relief, petitioner contends that the aggravating circumstance upon which his death sentence is based is overbroad, vague, open-ended, and conducive to arbitrary and capricious application in violation of *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980).

The statutory aggravating circumstance at issue here is *Ga. Code Ann.* § 27–2534.-1(b)(7) (recodified as O.C.G.A. § 17–10–30(b)(7)). That section provides that a sentence of death may be authorized in a murder case if the jury finds "[that] the offense of murder, rape, armed robbery, or kidnapping was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim."

█ A federal court may review a state's aggravating factors to determine whether they "genuinely narrow the class of persons eligible for the death penalty and ... reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Zant v. Stephens*, — U.S. —, 103 S.Ct. 2733, 2742–2743, 77 L.Ed.2d 235 (1983). How-

ever, the court cannot second-guess a state court's interpretation of an aggravating circumstance if that interpretation satisfies these constitutional requirements. *Tucker v. Zant*, 724 F.2d 882 (11th Cir.1984).

Petitioner argues that the application of this aggravating circumstance is violative of the Eighth and Fourteenth Amendments because the trial judge failed to limit the instructions authorizing the jury to find this aggravating circumstance. The Magistrate found that the requirements of *Godfrey* had been satisfied and therefore there was no violation of the Eighth and Fourteenth Amendments.

Petitioner objects to this finding and argues that the Supreme Court in *Zant v. Stephens, supra*, held that the § (b)(7) aggravating circumstance was unconstitutionally applied in the State of Georgia and therefore a death sentence based solely on § (b)(7), such as the petitioner's, cannot stand. Dix further argues that even if a death sentence based solely on § (b)(7) could be valid, the trial court failed to define the terms of the aggravating circumstance in order to adequately guide the jury's discretion, pursuant to the requirements of *Godfrey*. 446 U.S. at 428–429, 100 S.Ct. at 1764–1765.

Both arguments are without merit. It is true that the Court in *Zant* stated, "this case does not implicate our holding in *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), that the (b)(7) aggravating circumstance construed by the Georgia Supreme Court was unconstitutionally broad and vague." However, the holding in *Godfrey* specifically applied to the facts and circumstances of that case. Furthermore, a limiting instruction is not required in every case. *Westbrook v. Zant*, 704 F.2d 1487, 1504 (11th Cir.1983); *Stanley v. Zant*, 697 F.2d 955, 971 (11th Cir.1983). The *Godfrey* court intimated that the uncontrolled discretion of an uninstructed jury could be cured by review in the Georgia Supreme Court. 446 U.S. at 429, 100 S.Ct. at 1765. *See also Westbrook v. Zant, supra*.

The *Godfrey* plurality specifically noted that following the Supreme Court decision in *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), the Georgia Supreme Court for the first time articulated some of the conclusions it had reached with respect to the interpretation of § (b)(7). The Supreme Court made reference to, and interpreted two Georgia Supreme Court opinions, *Blake v. State*, 239 Ga. 292, 236 S.E.2d 637, *cert. den.*, 434 U.S. 960, 98 S.Ct. 492, 54 L.Ed.2d 320 (1977), and *Harris v. State*, 237 Ga. 718, 230 S.E.2d 1 (1976), *cert. den.*, 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 251 *reh. den.*, 434 U.S. 882, 98 S.Ct. 247, 54 L.Ed.2d 166 (1977), stating,

> The *Harris* and *Blake* opinions suggest that the Georgia Supreme Court had by 1977 reached three separate but consistent conclusions respecting the § (b)(7) aggravating circumstance. The first was that the evidence that the offense was "outrageously or wantonly vile, horrible or inhuman" had to demonstrate "torture, depravity of mind, or an aggravated battery to the victim." The second was that the phrase, "depravity of mind," comprehended only the kind of mental state that led the murderer to torture or to commit an aggravated battery before killing his victim. The third, derived from *Blake* alone, was that the word, "torture," must be construed *in pari materia* with "aggravated battery" so as to require evidence of serious physical abuse of the victim before death.

446 U.S. at 431, 100 S.Ct. at 1766.

The Court further stated that the validity of the death sentence "turns on whether, in light of the facts and circumstances of the murders that he was convicted of committing, the Georgia Supreme Court can be said to have applied a constitutional construction of the phrase "outrageously or wantonly vile, horrible or inhuman in that they involved ... depravity of mind." *Id.* at 432, 100 S.Ct. at 1767.

In *Godfrey*, the facts and circumstances indicated that the victims were not tortured nor did they suffer serious physical abuse

prior to their deaths. For those reasons, the Supreme Court held that the Georgia Supreme Court review failed to satisfy the criteria mentioned in *Harris, supra,* and *Blake, supra,* and therefore the § (b)(7) circumstance had been applied in an unconstitutional manner in *Godfrey*.

■ The evidence in this case is clearly to the contrary. In *Dix v. State*, 238 Ga. 209, 232 S.E.2d 47 (1977), the Georgia Supreme Court specifically delineated the evidence in the record which supported the jury's findings of the § (b)(7) aggravating circumstance. *See* 238 Ga. at 211, 232 S.E.2d 47.

Reviewing the evidence in the transcript, the court finds that the aggravating circumstance found by the jury is supported by the record. It is clear from the evidence that torture and aggravated battery preceded the victim's death. Thus, this court concludes that the Georgia Supreme Court review in the instant case satisfies the *Harris* and *Blake* criteria, and that the § (b)(7) aggravating circumstance upon which Dix's death sentence was based was not applied in an impermissibly vague, overbroad, arbitrary, or capricious manner, in violation of his Eighth and Fourteenth Amendment rights. *See Burger v. Zant*, 718 F.2d 979 (11th Cir.1983). Accordingly, petitioner is not entitled to habeas relief on this ground.

## IV. CHALLENGE TO THE INSTRUCTIONS RELATING TO SENTENCE

■ As a ninth ground for relief, petitioner contends that the sentence of death is cruel and unusual punishment and deprives him of due process because the trial court failed to adequately instruct his jury concerning the consideration of mitigating circumstances, and failed to adequately inform the jury that a life sentence could be imposed even if a statutory aggravating circumstance were found to exist. (The Court's instructions on these matters are found at T.Tr. 1067–1070). The Magistrate found that the instructions were adequate pursuant to the requirements of *Gregg v.*

*Georgia,* 428 U.S. 153, 164, 96 S.Ct. 2909, 2920, 49 L.Ed.2d 859 (1976).

After reviewing all of the instructions, the court finds that they were not sufficient to channel the jury's discretion as required by *Gregg v. Georgia, supra. See also Moore v. Zant,* 722 F.2d 640, 646–647 (11th Cir.1983); *Corn v. Zant,* 708 F.2d 549, 558–59 and 560–61 (11th Cir.1983); *Westbrook v. Zant,* 704 F.2d 1487, 1500–1503 (11th Cir.1983); *Spivey v. Zant,* 661 F.2d 464, 467–72 (5th Cir., Unit B 1981). The instructions very clearly stated that a death sentence could only be imposed if the jury found beyond a reasonable doubt that the offense was committed under one or more statutory aggravating circumstances. (T.Tr. 1067). The jury was also told that it could impose a life sentence even if it found that there were aggravating circumstances present. (T.Tr. 1070). However, the Court failed to define mitigating circumstances or to describe their nature and function.

In *Spivey v. Zant,* 661 F.2d at 471, the Court stated:

> In light of *Lockett, Gregg,* and *Chenault,* we hold that the eighth and fourteenth amendments require that when a jury is charged with the decision whether to impose the death penalty, the jury must receive clear instructions which not only do not preclude consideration of mitigating factors, *Lockett,* but which also "guid[e] and focu[s] the jury's objective consideration of the particularized circumstances of the individual offense and the individual offender ..." *Jurek v. Texas,* 428 U.S. [262] at 274, 96 S.Ct. [2950] at 2957 [49 L.Ed.2d 929]. In most cases, this will mean that the judge must clearly and explicitly instruct the jury about mitigating circumstances and the option to recommend against death; in order to do so, the judge will normally tell the jury what a mitigating circumstance is and what its function is in the jury's sentencing deliberations. The constitution does not require the use of the words "mitigating circumstances." So long as the instruction clearly communi-

cates that the law recognizes the existence of circumstances which do not justify or excuse the offense, but which, in fairness or mercy, may be considered as extenuating or reducing the degree of moral culpability and punishment, *Coker v. Georgia,* 433 U.S. 584, 590–91, 97 S.Ct. 2861, 2865, 53 L.Ed.2d 982, this portion of the constitutional requirement is satisfied.

The only instruction on mitigating circumstances in this case was as follows: "... You are authorized to consider all facts and circumstances if you find any, in extenuation and mitigation of punishment." (T.Tr. 1067–1068). In *Finney v. Zant,* 709 F.2d 643, 646–47 (11th Cir.1983) and *Westbrook v. Zant,* 704 F.2d at 1501, a jury instruction virtually identical to the one in this case was found to be constitutionally inadequate. The Court in *Finney* said, "An authorization to consider mitigating circumstances is a hollow instruction when unaccompanied by an explanation informing the jury why the law allows such a consideration and what effect a finding of mitigating circumstances has on the ultimate recommendation of sentence." 709 F.2d at 647.

In the case at bar, the trial court failed to communicate clearly to the jury "that the law recognizes the existence of facts or circumstances which, though not justifying or excusing the offense, may properly be considered in determining whether to impose the death sentence." *Spivey v. Zant,* 661 F.2d at 472. Accordingly, petitioner's sentence must be set aside.

## V. GROUNDS RELATING TO CRUEL AND UNUSUAL TREATMENT

Grounds four, five, six, and twelve challenge whether the death penalty constitutes cruel and unusual punishment. The Magistrate found that all four arguments raised by the petitioner were without merit.

Petitioner contends, as his fourth ground for relief, that the application of the death penalty to him is arbitrary and capricious and violates the Eighth and Fourteenth

Amendments to the United States Constitution.

Petitioner fails to state a claim under the Eighth Amendment. It is clear from the Supreme Court decision in *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), that the Georgia death penalty is not *per se* cruel and unusual punishment in violation of the Eighth Amendment. Furthermore, in *McCleskey v. Zant*, 580 F.Supp. 338 (N.D.Ga.1984), the Court addressed the issue of whether the death penalty was applied arbitrarily and capriciously in violation of the Fourteenth Amendment. The Court concluded that it was not. *Id.* at 380. Likewise, this court finds the petitioner's argument to be without merit. The facts and circumstances of this case clearly indicate that the death penalty was not applied arbitrarily. The law requires that a jury find that an aggravating circumstance exists before the death penalty may be imposed. In this case, the jury found that the murder involved inhuman torture, and the facts of this case clearly corroborate the jury's finding.

As his fifth ground for relief, petitioner contends that the death penalty is an excessive penalty in that its theoretical justifications are groundless and irrational in fact. Specifically, petitioner argues that executions have no deterrent effect; that executions are socially sanctioned violence; that public sentiment for retribution is not so strong as to justify use of the death penalty; and that no penal purpose is served by execution that is not also served by life imprisonment. The Magistrate correctly noted that these arguments are philosophical and not legal in nature, and therefore they do not rise to the level of a constitutional claim.

Petitioner contends, as his sixth ground for relief, that the death penalty is cruel and unusual punishment under the facts of this case when all factors relating to the offense and the offender, including the mitigating circumstances, are considered. Since the court has already determined that the petitioner must be resentenced because the sentencing instructions violated petitioner's Eighth and Fourteenth Amendment rights, the court need not address this issue.

Finally, as his twelfth ground, Dix contends that the means used in Georgia to inflict the death penalty constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. The court disagrees with petitioner's argument as it is well settled that death by electrocution is not cruel and unusual punishment, and therefore does not violate the Eighth and Fourteenth Amendments. *See Spinkellink v. Wainwright*, 578 F.2d 582 (5th Cir.1978), *cert. denied*, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796, *reh. denied*, 441 U.S. 937, 99 S.Ct. 2064, 60 L.Ed.2d 667.

For the foregoing reasons, petitioner is not entitled to habeas relief on any of these grounds, except to the extent provided herein.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

As his eighth ground for habeas corpus relief, petitioner contends that he was denied effective assistance of counsel because: 1) his trial attorney improperly withdrew the special plea of insanity; 2) his attorney failed to challenge the composition of the grand and traverse jury pools; and 3) his attorney failed to present mitigating evidence other than petitioner's own testimony. The Magistrate concluded that petitioner received effective assistance of counsel.

It is well settled that a defendant in a criminal trial has a constitutional right to effective assistance of counsel under the Sixth Amendment, and the Due Process Clause of the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The constitutional standard for effective assistance of counsel is counsel "reasonably likely to render and rendering reasonably effective assistance given the totality of the circumstances." *House v. Balkcom*, 725 F.2d 608 (11th Cir.1984), quoting *Washington v. Strickland*, 693 F.2d 1243, 1250

(5th Cir. Unit B 1982) (en banc), *cert. granted,* — U.S. —, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983); *Tucker v. Zant,* 724 F.2d 882, 892 (11th Cir.1984); *McNeal v. Wainwright,* 722 F.2d 674, 676 (11th Cir. 1984). However, effective counsel does not mean errorless counsel or counsel judged ineffective by hindsight. *Corn v. Zant,* 708 F.2d 549, 561 (11th Cir.1983); *Ford v. Strickland,* 696 F.2d 804, 820 (11th Cir. 1983) (en banc).

■ A petitioner seeking to overturn his conviction on the basis of ineffective assistance of counsel has the burden of establishing ineffectiveness and prejudice. *Birt v. Montgomery,* 725 F.2d 587 (11th Cir.1984); *Washington v. Strickland,* 693 F.2d at 1250; *King v. Strickland,* 714 F.2d 1481, 1485 (11th Cir.1983); *Adams v. Wainwright,* 709 F.2d 1443, 1445 (11th Cir. 1983). The petitioner must prove that "the ineffective assistance created not only 'a *possibility* of prejudice but that [it] worked to [his] *actual* and substantial disadvantage.'" *Washington v. Strickland,* 693 F.2d at 1258, quoting *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 1595, 71 L.Ed.2d 816 (1982); *Foster v. Strickland,* 707 F.2d 1339, 1342 (11th Cir.1983); *Corn v. Zant,* 708 F.2d at 561. Prejudice means more than mere detriment to petitioner's case. *Adams v. Balkcom,* 688 F.2d 734, 739 (11th Cir.1982), citing *Washington v. Watkins,* 655 F.2d 1346, 1360 (5th Cir.1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982).

■ Petitioner's first contention is that he received ineffective assistance of counsel when his trial counsel withdrew the special plea of insanity prior to trial. In his objections to the Magistrate's Report and Recommendation, petitioner contends that trial counsel failed to conduct a reasonable substantial investigation into the issue of petitioner's competency to stand trial, and instead his attorney withdrew the special plea of insanity prior to trial. Petitioner argues that had trial counsel consulted with Dr. Sapp concerning petitioner's competency to stand trial, Dr. Sapp would have informed him that petitioner was incompe-

tent to stand trial. Petitioner further contends that in light of the available psychiatric evidence that he was not mentally competent to stand trial, his attorney's withdrawal of the plea resulted in a later failure to litigate the issue and this act thus constituted ineffective assistance of counsel.

It remains undisputed that petitioner's trial counsel withdrew the special plea of insanity prior to trial. However, this court does not find such withdrawal of the special plea to be ineffective assistance of counsel, but instead believes said withdrawal of the plea to be more of a tactical decision. The record shows that the special plea of insanity was only withdrawn after petitioner had been examined and evaluated at Central State Hospital and had been found competent to stand trial. Furthermore, as previously stated in Part I of this Order, the laywitness and psychiatric testimony did not raise a *bona fide* doubt as to the petitioner's competency to stand trial. Moreover, trial counsel's comments in the "Memorandum to be Attached to the Report of the Trial Judge" (see Part I, *supra*) clearly indicate that trial counsel felt Dix was legally competent to stand trial. Accordingly, there is no ineffective assistance of counsel on this ground. *Cf. Foster v. Strickland, supra.*

Petitioner next contends that trial counsel was ineffective because he failed to challenge the composition of petitioner's grand and traverse juries. Petitioner argues that both jury pools were underrepresentative of blacks and women. Specifically, petitioner has offered to prove that although the population of Clayton County, where petitioner was tried, was 50.4% women and 4.5% black persons, the grand jury pool from which petitioner's indicting grand jury was drawn was only 11.3% women and 2.7% black persons; the traverse jury pool was only 36.2% women and 1.7% black persons.

Assuming without deciding that a successful challenge to the composition of the grand and traverse juries could be made, there is insufficient evidence in the record

to sustain a finding of ineffective assistance of counsel on this ground. *See Davis v. Zant,* 721 F.2d 1478, 1490 (11th Cir. 1983), *reh. en banc granted,* 728 F.2d 492 (11th Cir.1984). Moreover, given the overwhelming evidence of petitioner's guilt already mentioned herein, any error which might have resulted from trial counsel's failure to challenge the composition of the grand and traverse juries is harmless beyond a reasonable doubt. *See generally, Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

Petitioner's third contention is that counsel was ineffective because he failed to present mitigating evidence on petitioner's behalf during the sentencing phase of trial. Petitioner contends that relatives and friends should have been called in order to present to the jury some evidence of his character prior to the murder.

At the sentencing phase of petitioner's trial, trial counsel presented no evidence in mitigation of sentence other than the testimony of the petitioner himself. The Magistrate determined that evidence in mitigation of sentence was presented during the guilt/innocence phase of petitioner's trial (Report and Recommendation, pp. 48–51). Petitioner has objected to this finding contending that the evidence introduced during the guilt/innocence phase of trial was limited to evidence relevant to the defense of insanity at the time of the commission of the offense. Petitioner argues that this limitation necessarily precluded the broad range of evidence concerning petitioner's entire background and character admissible only at the penalty phase of trial.

■ The sentencing phase in any criminal case is crucial, and counsel is obligated to be prepared for that part of the trial. *Stanley v. Zant,* 697 F.2d 955, 963 (11th Cir.1983). As noted in *King v. Strickland,* 714 F.2d at 1490 (11th Cir.1983), the Eleventh Circuit has emphasized the importance of pre-trial preparation and investigation. Failure to present mitigating evidence is clearly a factor suggesting ineffectiveness of counsel. *Id.* at 1491.

In the instant case, the issue is not whether petitioner's trial attorney failed to present any mitigating evidence, but whether he presented enough mitigating evidence. At the sentencing phase of trial, the only mitigating evidence presented was the testimony of the petitioner himself. However, during the guilt/innocence phase of the trial, the jury heard testimony from Dix's mother, friends, and relatives, and also from the psychiatrists regarding Dix's character and mental state. Said testimony could be considered mitigating evidence. Furthermore, the Judge instructed the jury that they were authorized to consider all of the evidence presented during the trial in arriving at a determination as to whether the death penalty or a life sentence should be imposed (T.Tr. 1067).

This court is persuaded that the testimony of the defendant at the sentencing phase coupled with the testimony of Dix's mother, friends, other relatives, and Drs. Sapp and Bosch at the guilt/innocence phase, was sufficient presentation of mitigating circumstances, and therefore the court does not find ineffective assistance of counsel on this ground.

Nevertheless, since the court has already determined that the petitioner must be resentenced, petitioner will have an opportunity at that time to resubmit mitigating evidence.

## VII. TIMELY NOTICE OF AGGRAVATING CIRCUMSTANCES

■ As his seventh ground for habeas relief, petitioner contends that the death penalty was assessed against him on the basis of fundamentally unfair proceedings. Specifically, he contends that he was not given notice and an opportunity to present evidence and argument directed to specific issues determinative of life and death because no aggravating circumstances charged to or considered by the trial jury were alleged in petitioner's indictment.

Under Georgia law, a sentence of death may only be imposed where the jury finds a statutory aggravating circumstance, O.C.G.A. § 17–10–31, however, there is no re-

quirement that these aggravating circumstances be alleged in an indictment against the accused. *House v. Stynchcombe,* 239 Ga. 222, 224, 236 S.E.2d 353 (1977); *Smith v. State,* 236 Ga. 12, 20, 222 S.E.2d 308 (1976). The court agrees with the Magistrate that this ground does not rise to the level of a constitutional claim. Accordingly, no relief can be granted on this ground.

## VIII. FAILURE TO TRANSCRIBE CLOSING ARGUMENTS

The transcript of petitioner's trial does not include the closing arguments of counsel. Petitioner contends, as his tenth ground for relief, that the failure to record counsel's arguments is a constitutional violation which requires vacation of his death sentence. The Magistrate rejected this argument based upon *Stephens v. Zant,* 631 F.2d 397, 402–04 (5th Cir.1980), *rev'd* on other grounds, —— U.S. ——, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), and upon petitioner's failure to allege that any erroneous, inflammatory, or prejudicial remarks were made by the prosecutor.

 The court recognizes its obligation to review each death sentence to determine whether the sentence was imposed under some passion or prejudice. *See Gregg v. Georgia,* 428 U.S. 153, 198, 96 S.Ct. 2909, 2936, 49 L.Ed.2d 859 (1976); O.C.G.A. § 17–10–35(c)(1). The court finds that the trial record in this case contains sufficient, transcribed evidence upon which a conviction and sentence can be based. Therefore, absent any concrete allegation or showing that the prosecutor made inflammatory or prejudicial remarks, "it is well settled that failure to transcribe counsel's arguments is not a constitutional violation requiring vacation of a death sentence." *Corn v. Zant,* 708 F.2d 549, 560 (11th Cir.1983), citing *Stephens v. Zant, supra.* Accordingly, this argument is without merit, and habeas relief is DENIED on this ground.

## IX. DENIAL OF FUNDS

As his thirteenth ground for habeas relief, petitioner contends that the Tattnall County Superior Court's denial of his motion for funds to adequately present his state habeas claims to that court denied him equal protection. The Magistrate rejected this argument, finding that there was no statutory provision providing for funds for witnesses in a civil habeas proceeding. The Magistrate further stated that petitioner had failed to carry his burden of proof to establish sufficient facts to warrant a finding of denial of constitutional rights.

Petitioner has objected to the Magistrate's findings and argues that because of the court's denial of his motion for funds he did not have the funds to bring witnesses to court, and the only witnesses who testified at his state habeas proceeding were those who voluntarily appeared and paid their own expenses. Therefore, petitioner contends that he is entitled to have an evidentiary hearing on any factual questions raised in his petition because the material facts were not adequately developed at any state court hearing, and the petitioner contends that he is entitled to have an evidentiary hearing on any factual questions raised in his petition because the material facts were not adequately developed at any state court hearing, and the petitioner did not deliberately bypass any opportunity to develop the material facts in state court, citing *Thomas v. Zant,* 697 F.2d 977 (11th Cir.1983).

 First, under Georgia law, a habeas petitioner, even in a death penalty case, has no right to receive state funds to employ counsel, investigators, and expert witnesses to establish the claims he raises in his state habeas proceeding. *Pulliam v. Balkcom,* 245 Ga. 99, 100, 263 S.E.2d 123 (1980); *Spencer v. Hopper,* 243 Ga. 532, 537, 255 S.E.2d 1 (1979); *Harris v. Hopper,* 243 Ga. 244, 245, 253 S.E.2d 707 (1979). Thus, the granting or denial of a motion for funds lies within the sound discretion of the court, and as the Magistrate correctly noted, petitioner has failed to allege an abuse of discretion by the Superior Court Judge. Absent an allegation or showing of abuse of discretion, this court cannot hold that

**1072**

the Tattnall County Superior Court Judge, in exercising his discretion, deprived petitioner of a full and fair hearing on his claims in the state habeas proceedings.

■ Furthermore, 28 U.S.C. § 2254(d) provides that a state court's findings are entitled to a presumption of correctness unless the petitioner establishes or it otherwise appears, or the respondent admits— ... "(3) that the material facts were not adequately developed at the state court hearing." *See also Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Moore v. Zant*, 722 F.2d 640, 649 (11th Cir.1983); *Thomas v. Zant, supra*, at 979, n. 2. Petitioner has failed to set forth sufficient facts to establish that any additional evidence or testimony from the witnesses who did not appear at the state habeas proceeding would not be cumulative, and would be material. *See Tucker v. Zant*, 724 F.2d 882, 898 (11th Cir.1984). Accordingly, petitioner has not carried his burden of showing that the state habeas proceeding did not adequately develop the material facts, and a bare assertion is insufficient to warrant an evidentiary hearing.

## X. CHALLENGES TO THE COMPOSITION OF DIX'S GRAND AND TRAVERSE JURIES

As his fourteenth and fifteenth grounds for relief, petitioner contends respectively that his grand jury and traverse jury pools were underrepresentative of blacks and women, and therefore were composed in an unconstitutional manner.

■ It is well settled under Georgia law that failure to make a timely challenge to the alleged unconstitutional composition of the grand or traverse juries precludes a petitioner from later raising this matter as a ground for habeas relief. *Ga. Code Ann.* § 50–127(1) (recodified as O.C.G.A. § 9–14–42). Furthermore, this state procedural

rule will be upheld by a federal court unless the petitioner shows "cause" for noncompliance with the state statute and "actual prejudice." *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 89, 97 S.Ct. 2497, 2507, 53 L.Ed.2d 594 (1977); *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); *Birt v. Montgomery*, 725 F.2d 587 (11th Cir.1984); *Smith v. Kemp*, 715 F.2d 1459 (11th Cir.1983).

■ It appears that no timely challenge to the composition of the grand or traverse juries was made before or during the trial and petitioner has not shown cause for said noncompliance or actual prejudice. Furthermore, the court has already concluded that there was no ineffective assistance of counsel with respect to this ground. Therefore, petitioner is not entitled to habeas relief on this ground.

## XI. CHALLENGE TO GEORGIA'S APPELLATE REVIEW PROCEDURE

■ Petitioner contends, as his eleventh ground for relief, that the Georgia statutory provisions and actual practices governing appellate review of death sentences are inadequate in that they deny petitioner the effective assistance of counsel; in that they deny petitioner a fundamentally fair hearing and reliable determination of the issue of life or death; and that they deny petitioner the basic tools of an adequate defense and appeal because of his indigency. More specifically, petitioner contends that in its comparative proportionality review, the Georgia Supreme Court considered and referred to prior cases in which it failed to set forth the underlying facts of the crime or the character of the criminal offender. Petitioner argues that this practice disabled his counsel from preparing or presenting argument.[8]

---

8. In the recent Supreme Court case of *Pulley v. Harris*, —— U.S. ——, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), the Supreme Court held that proportionality reviews are not required by the Constitution, provided that the state's "capital sentenc-

ing system [is not] so lacking in other checks on arbitrariness that it would not pass constitutional muster without comparative proportionality review...." *Id.* at ——, 104 S.Ct. at 873. However, since the Georgia statutory scheme does

At the outset, the court notes that in *Gregg v. Georgia, supra,* the Supreme Court set forth the entire Georgia statutory scheme where a death sentence could be imposed and explicitly approved the procedures for appellate review of a death sentence by the Georgia Supreme Court. Georgia's capital sentencing law provides that the supreme court is required to conduct an expedited review of every death sentence. O.C.G.A. § 17–10–35. In reviewing the sentence, the Georgia Supreme Court must determine "[w]hether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." O.C.G.A. § 17–10–35(c)(3). Furthermore, the court must "include in its decision a reference to those similar cases which it took into consideration." O.C.G.A. § 17–10–35(e).

In its decision affirming the petitioner's conviction and death sentence, the Georgia Supreme Court included an appendix listing comparative cases (with citations) which the court considered in determining whether the petitioner's death sentence was disproportionate to the sentence imposed in similar cases, considering the crime and the character of the defendant. *See Dix v. State,* 238 Ga. 209, 217, 232 S.E.2d 47 (1977). The petitioner was not precluded from reviewing these cases in order to prepare his argument. Furthermore, as Georgia's appellate review procedures were approved in *Gregg, supra,* and those procedures were followed in this case, petitioner's contentions are without merit. *See Tucker v. Zant,* 724 F.2d 882, 895–96 (11th Cir.1984).

## CONCLUSION

The court has thoroughly reviewed the record and has concluded that the trial court's instructions to the jury regarding mitigating circumstances were constitutionally defective, violating petitioner's Eighth and Fourteenth Amendment rights. Accordingly, habeas corpus relief is hereby GRANTED as it pertains to the imposition of the death sentence. This case is REMANDED to the Superior Court of Clayton County, and the respondent is hereby ORDERED to commence resentencing procedures within 120 days from the date on which this judgment becomes final. Failure to do so will result in the imposition of a life sentence without further order of this court. In the event the matter is appealed, this Order shall be automatically stayed pending the filing of the mandate from the Eleventh Circuit Court of Appeals in this court. Respondent is further DIRECTED to file a certified copy of petitioner's new sentence, if such is obtained, with the clerk of this court.[9]

**9.** The court having ruled on the Magistrate's Report and Recommendation, petitioner's motion to continue the proceedings is MOOT.

provide for a proportionality review, and such review is designed to prohibit the imposition of a death penalty arbitrarily or disproportionately, the court will address this issue briefly.